**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

——————————————————————— x

Raymond Winans Jr., individually on
behalf of himself and all others similarly
situated,

                  Plaintiff,

v.

S.C. Johnson & Son, Inc. and Sun Bum, LLC,

                 Defendants.

——————————————————————— x

Case No.

**CLASS ACTION COMPLAINT**

**<u>JURY TRIAL DEMANDED</u>**

Plaintiff Raymond Winans Jr. (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by his attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

**<u>NATURE OF THE ACTION</u>**

1.    This action seeks to remedy the deceptive and misleading business practices of Sun Bum LLC and S.C. Johnson & Son, Inc., (hereinafter collectively "Defendants") with respect to the marketing and sale of Defendants' Sun Bum sunscreen and after-sun products throughout the state of New York and throughout the country, including the following products (hereinafter collectively the "Products"):

- Sun Bum Oxy Free Zinc Oxide Sunscreen Lotion- SPF 50;

- Sun Bum After-Sun Cool Down Gel; and

- Sun Bum After-Sun Cool Down Aloe Vera Spray.

2.    Defendants do specifically list both the active and inactive ingredients of these Products but fail to disclose that the product contains "benzene."

1

3.      Benzene is a wildly recognized and incredibly dangerous substance, especially in the context of applying it to the skin.

4.      Benzene has been recognized, acknowledged, and accepted as a well-known health hazard and human carcinogen for approximately a century.[1]

5.      For example, Benzene is known to harm the bone marrow and long exposure can lead to blood cancer, such as leukemia.[2]

6.      Consumers like the Plaintiff trust manufacturers such as Defendants to sell Products that are safe and free from harmful known toxins, including benzene.

7.      Plaintiff and those similarly situated (hereinafter "Class Members") certainly expect that the sunscreen they purchase will comply with its labeling and not contain any knowingly harmful substances like benzene.

8.      Defendants' specifically manufacture, sell, and distribute the Products in this manner using a marketing and advertising campaign centered around claims that appeal to health-conscious consumers.

9.      For example, Defendants' marketing and advertising campaign includes the one place that every consumer looks when purchasing a product—the packaging and labeling itself. The packaging and labeling are designed to appeal to health-conscious consumers, which include representations such as "Dermatologist Tested", "Gluten Free and Vegan," "Antioxidant Enriched (Vitamin E)," "Preserves and Intensifies Tan," "Premium Hydrating After Sun Gel," "Soothing and Cooling Aloe Gel with Essential Tea Tree Leaf Oil," "Relieves Dry and Sun Damaged Skin," "Dry Touch Body Oil Enriched with Cucumber Extract and Vitamin E," and "Moisturizes and Nourishes Dry and Sun Damaged Skin."

---

[1] https://pubmed.ncbi.nlm.nih.gov/17718179/
[2] https://emergency.cdc.gov/agent/benzene/basics/facts.asp

10.     Plaintiff expects the ingredient listing on the packaging and labeling to accurately disclose the ingredients within the Products.

11.     However, Defendants' advertising and marketing campaign is false, deceptive, and misleading because the Products contain benzene, which Defendants do not list or mention anywhere on the Products' packaging or labeling.

12.     Plaintiff and Class Members relied on Defendants' misrepresentations and omissions of what is in the Products when they purchased them.

13.     Consequently, Plaintiff and Class Members lost the entire benefit of their bargain when what they received was a sunscreen product contaminated with a known carcinogen.

14.     That is because Defendants' Products containing a known human carcinogen have no value.

15.     As set forth below, sunscreen products that contain benzene are in no way safe for humans and are entirely worthless.

16.     Accordingly, Defendants' conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350.  Defendants also breached and continue to breach their warranties regarding the Products.  In addition, Defendants have been and continue to be unjustly enriched.  Lastly, Plaintiff brings a claim for medical monitoring costs associated with testing, monitoring, and remediating the effects of their benzene exposure.

17.     Accordingly, Plaintiff brings this action against Defendants on behalf of himself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

**FACTUAL BACKGROUND**

18.    Consumers have become increasingly concerned about the effects of synthetic and chemical ingredients in products that they and their family members put on and/or into their bodies. Companies such as Defendants have capitalized on consumers' desire for healthy and safe products, and indeed consumers are willing to pay, and have paid, a premium for these products.

19.    Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains unsafe substances, such as benzene, especially at the point of sale, and therefore must and do rely on Defendants to report truthfully and honestly what the Products contain on the Products' packaging or labels.

20.    When consumers look at the Products' packaging there is no mention of benzene.  Benzene is not listed in the ingredients section, nor is there any warning about the inclusion (or even potential inclusion) of benzene in the Products.   Rather, Defendants' packaging is designed to appeal to health-conscious consumers, including parents of children, with the representations "Dermatologist Tested", "Gluten Free and Vegan", "Antioxidant Enriched (Vitamin E)", "Preserves and Intensifies Tan", "Premium Hydrating After Sun Gel", "Soothing and Cooling Aloe Gel with Essential Tea Tree Leaf Oil", "Relieves Dry and Sun Damaged Skin", "Dry Touch Body Oil Enriched with Cucumber Extract and Vitamin E", "Preserves and Extends Tan", and "Moisturizes and Nourishes Dry and Sun Damaged Skin".  This leads reasonable consumers to believe the Products are safe and do not contain dangerous chemicals like benzene.

21.    However, despite this, the Products contain benzene.

22.     21st century research has confirmed that there is no safe level of benzene exposure.[3]

23.     Benzene has been recognized, acknowledged, and accepted as a well-known health hazard and human carcinogen for approximately a century.[4]

24.     The National Toxicology Program (hereinafter "NTP") has regarded benzene as "known to be a human carcinogen based on sufficient evidence of carcinogenicity from studies in humans."[5]   Benzene has also been "found to be carcinogenic to humans" by the International Agency for Research on Cancer (hereinafter "IARC").

25.     According to the Center for Disease Control (hereinafter "CDC"), benzene can cause severe health issues such as anemia, immune system damage, and cancer.[6]

26.     Direct benzene exposure through the skin is particularly concerning.  For example, "[d]irect exposure of the eyes, skin, or lungs to benzene can cause tissue injury and irritation."[7]

27.     Research also has revealed that sunscreen ingredients can be absorbed into the bloodstream.[8]

28.     Moreover, a study by Health Canada's Bureau of Chemical Hazards concluded that the application of sunscreen specifically increases the absorption rate of benzene through the skin, thereby increasing the risk of harm.[9]

29.     Even low levels of benzene are particularly dangerous in a sunscreen product because "[s]unscreen products are typically used in many times higher volume than standard drug

---

[3] https://www.annualreviews.org/doi/full/10.1146/annurev.publhealth.012809.103646
[4] https://pubmed.ncbi.nlm.nih.gov/17718179/
[5] https://ntp.niehs.nih.gov/ntp/roc/content/profiles/benzene.pdf
[6] https://emergency.cdc.gov/agent/benzene/basics/facts.asp
[7] *Id.*
[8] https://abcnews.go.com/Health/sunscreen-absorbed-bloodstream-testing-needed/story?id=68442221
[9] https://www.valisure.com/blog/valisure-news/valisure-detects-benzene-in-sunscreen/

products like tablets or capsules, so even a relatively low concentration limit can result in very high totally [benzene] exposure."[10]

30.    The National Institute for Occupational Safety and Health ("NIOSH") recommends protective equipment be worn by workers expecting to be exposed (by either "inhalation, skin absorption, ingestion, skin and/or eye contact") to benzene at concentrations of 0.1 ppm.[11]

31.    Experts in the field of dermatology agree with this assessment.  For example, Christopher Bunick, a professor of dermatology at Yale University has stated:

> Considering that human skin has a large total surface area (~1.85 m2), and that ~28.5 g of sunscreen is needed per application to properly cover that skin surface, it follows then that there is not a safe level of benzene that can exist in sunscreen products. The total mass of sunscreen required to cover and protect the human body, in single daily application or repeated applications daily, means that even benzene at 0.1 ppm in a sunscreen could expose people to excessively high nanogram amounts of benzene.[12]

32.    Valisure LLC recently published a study ("Study") that found that benzene has been found in many sunscreens.[13]

33.    Specifically, Valisure found that Defendants' Products contained some of the highest benzene levels out of the 272 sunscreen and after-sun products tested.[14]

34.    FDA guidance states that no level of benzene is safe, and benzene is not acceptable in these types of products:

> FDA currently recognizes the high danger of this compound and lists it as a "Class 1 solvent" that "should not be employed in the manufacture of drug substances, excipients, and drug products

---

[10] Valisure, Valisure Citizen Petition on Benzene in Sunscreen and After-sun Care products, May 24, 2021, https://www.valisure.com/blog/valisure-news/valisuredetects-benzene-in-sunscreen/, at 16.
[11] CDC, *The National Institute for Occupational Safety and Health (NIOSH), Benzene* (October 30, 2019), https://www.cdc.gov/niosh/npg/npgd0049.html
[12] *Id.* at 17.
[13] https://www.valisure.com/blog/valisure-news/valisure-detects-benzene-in-sunscreen/
[14] *Id.*

because of their unacceptable toxicity ... However, if their use is unavoidable in order to produce a drug product with a significant therapeutic advance, then their levels should be restricted" and benzene is restricted under such guidance to 2 parts per million ("ppm").[15]

35.     Since the majority of products tested did not contain detectable levels of benzene, its use is not unavoidable in order to achieve the benefits of sunscreen.  Thus, it is clear that benzene exposure in the manufacturing process can be specifically avoided so that the Products could have absolutely no benzene in them.[16]

36.     Therefore, Defendants' false, misleading, omissions, and deceptive misrepresentations regarding the ingredients of the Products are likely to continue to deceive and mislead reasonable consumers and the public, as they have already deceived and misled Plaintiff and the Class Members.

37.     Defendants' concealment was material and intentional because people are concerned with what is in the products that they are putting onto and into their bodies.  Consumers such as Plaintiff and the Class Members are influenced by the ingredients listed.  Defendants know that if they had not omitted that the Products contained benzene, then Plaintiff and the Class would not have purchased the Products at all.

## JURISDICTION AND VENUE

38.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section §1332(d) in that (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of New York, Defendant SC Johnson & Son Inc., is a citizen of Wisconsin,

---

[15] FDA, Q3C – 2017 Tables and List Guidance for Industry, https://www.fda.gov/media/71737/download.
[16] Valisure, Valisure Citizen Petition on Benzene in Sunscreen and After-sun Care products, May 24, 2021, https://www.valisure.com/blog/valisure-news/valisuredetects-benzene-in-sunscreen/, at 2.

and Defendant Sun Bum, LLC is a citizen of California; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

39.     This Court has personal jurisdiction over Defendants because Defendants conduct and transact business in the state of New York, contract to supply goods within the state of New York, and supply goods within the state of New York.

40.     Venue is proper because Plaintiff and many Class Members reside in the Eastern District of New York, and throughout the state of New York.  A substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

**PARTIES**

**Plaintiff**

41.     Plaintiff Raymond Winans Jr. is a citizen and resident of the state of New York. During the applicable statute of limitations period, Plaintiff purchased Defendants' Products that contained benzene.

42.     Had Defendants not made the false, misleading, and deceptive representations and omissions regarding the Products containing benzene, Plaintiff would not have been willing to purchase the Products.  Plaintiff purchased, purchased more of, and/or paid more for, the Products than he would have had he known the truth about the Products.  The Products Plaintiff received were worthless because they contain the known carcinogen benzene.  Accordingly, Plaintiff was injured in fact and lost money as a result of Defendants' improper conduct.

**Defendants**

43.     Defendant, S.C. Johnson & Son, Inc. is a Wisconsin corporation with its headquarters and principal place of business located in Racine, Wisconsin.  S.C. Johnson & Son, Inc. is authorized to do business in New York.  S.C. Johnson and Son, Inc. is a conglomerate and

owns some of the world's leading brands for shaving, grooming, sun care, feminine care, and skin care products.  S.C. Johnson & Son, Inc. distributes its products, including those at issue here, throughout the United States.  S.C. Johnson & Son, Inc.'s line of sunscreen products, including the Sun Bum sunscreen products purchased by Plaintiff and Class Members, are available at retail stores throughout New York and the United States.

44.     Defendant, Sun Bum, LLC is a Michigan limited liability company with its headquarters and principal place of business located in Encinitas, California.  Sun Bum, LLC is licensed to and does conduct business throughout the United States, including this District.  Sun Bum, LLC is a subsidiary of S.C. Johnson & Son, Inc., and is also responsible for the manufacturing, marketing, advertising, and distributing the Sun Bum sunscreen and after-sun products.

45.     Defendants' manufacture, market, advertise, and distribute the Products throughout the United States.  Defendants created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling of their Products.

## CLASS ALLEGATIONS

46.     Plaintiff brings this matter on behalf of himself and those similarly situated.  As detailed at length in this Complaint, Defendants orchestrated deceptive marketing and labeling practices.  Defendants' customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution, including injunctive relief.

47.     The Class is defined as all consumers who purchased the Products anywhere in the United States during the Class Period.

48.     Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the State of New York at any time during the Class Period (the "New York Subclass").

49.     The Class and New York Subclass shall be referred to collectively throughout the Complaint as the Class.

50.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

51.     <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers in the Class and the New York Class who are Class Members as described above who have been damaged by Defendants' deceptive and misleading practices.

52.     <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

     a.   Whether Defendants are responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

     b.   Whether Defendants' misconduct set forth in this Complaint demonstrates that Defendants have engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of their Products;

     c.   Whether Defendants made false and/or misleading statements and omissions to the Class and the public concerning the contents of their Products;

d.  Whether Defendants' false and misleading statements and omissions concerning their Products were likely to deceive the public; and

e.  Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members?

53.     Typicality: Plaintiff is a member of the Class.  Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading, and omitting conduct and purchased Defendants' Products.  Plaintiff is entitled to relief under the same causes of action as the other Class Members.

54.     Adequacy: Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class Members he seeks to represent, his consumer fraud claims are common to all members of the Class, he has a strong interest in vindicating his rights, he has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

55.     Predominance: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class.  The Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendants' deceptive, misleading, and omitting marketing and labeling practices.

56.     Superiority: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.  The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.  The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it

11

impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c.  When Defendants' liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.  This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.  This class action will assure uniformity of decisions among Class Members;

g.  The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.  Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by a single class action; and

i.  It would be desirable to concentrate in this single venue the litigation of all class members who were induced by Defendants' uniform false advertising to purchase their Products.

55.    Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## INJUNCTIVE CLASS RELIEF

56.    Rules 23(b)(1) and (2) contemplate a class action for purposes of seeking class-wide injunctive relief.  Here, Defendants have engaged in conduct resulting in misleading consumers about ingredients in the Products.  Since Defendants' conduct have been uniformly directed at all consumers in the United States, and the conduct continues presently, injunctive relief

on a class-wide basis is a viable and suitable solution to remedy Defendants' continuing misconduct.  Plaintiff would purchase the Products again if they did not include benzene.

57.     The injunctive Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

    a.  <u>Numerosity</u>: Individual joinder of the injunctive Class Members would be wholly impracticable.  Defendants' Product has been purchased by thousands of people throughout the United States.

    b.  <u>Commonality</u>: Questions of law and fact are common to members of the Class. Defendants' misconduct was uniformly directed at all consumers.  Thus, all members of the Class have a common cause against Defendants to stop their misleading conduct through an injunction.  Since the issues presented by this injunctive Class deal exclusively with Defendants' misconduct, resolution of these questions would necessarily be common to the entire Class.  Moreover, there are common questions of law and fact inherent in the resolution of the proposed injunctive class, including, *inter alia*:

        i.  Resolution of the issues presented in the 23(b)(3) class;

        ii.  Whether members of the Class will continue to suffer harm by virtue of Defendants' deceptive product marketing and labeling; and

        iii.  Whether, on equitable grounds, Defendants should be prevented from continuing to deceptively mislabel the Product?

    c.  <u>Typicality</u>: Plaintiff's claims are typical of the claims of the injunctive Class because his claims arise from the same course of conduct (i.e., Defendants'

deceptive and misleading marketing, labeling, and advertising practices). Plaintiff is a typical representative of the Class because, like all members of the injunctive Class, he purchased Defendants' Product which was sold unfairly and deceptively to consumers throughout the United States.

d. Adequacy: Plaintiff will fairly and adequately represent and protect the interests of the injunctive Class.  His consumer protection claims are common to all members of the injunctive Class and he has a strong interest in vindicating his rights.  In addition, Plaintiff and the Class are represented by counsel who are competent and experienced in both consumer protection and class action litigation.

58.    Plaintiff seeks injunctive relief on behalf of the Class Members on grounds generally applicable to the entire injunctive Class and Defendants have acted or refused to act in a manner that applies generally to the injunctive Class (i.e. Defendants have marketed their Products using the same misleading and deceptive labeling to all of the Class Members).  Any final injunctive relief or declaratory relief would benefit the entire injunctive Class as Defendants would be prevented from continuing their misleading and deceptive marketing practices and would be required to honestly disclose to consumers the true nature of the contents of the Products.

**CLAIMS**

**FIRST CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 349**
**(On Behalf of Plaintiff and New York Subclass Members)**

59.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

60.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

61.     The conduct of Defendants alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages against Defendants, enjoining them from inaccurately describing, labeling, marketing, and promoting the Products.

62.     There is no adequate remedy at law.

63.     Defendants misleadingly, inaccurately, and deceptively advertise and market their Products to consumers.

64.     Defendants' improper consumer-oriented conduct—including failing to label and warn that the Products have benzene—is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase Defendants' Products and to use the Products when they otherwise would not have.  Defendants made the untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

65.     Plaintiff and the New York Subclass Members have been injured inasmuch as they purchased products that were mislabeled, unhealthy, and entirely worthless.  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

66.     Defendants' advertising and Products' packaging and labeling induced Plaintiff and the New York Subclass Members to buy Defendants' Products.

67.     Defendants' deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

68.     As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

## SECOND CAUSE OF ACTION
## VIOLATION OF NEW YORK GBL § 350
**(On Behalf of Plaintiff and the New York Subclass Members)**

69.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

70.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

71.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

72.     Defendants' labeling and advertisements contain untrue and materially misleading statements and omissions concerning their Products inasmuch as they misrepresent that the Products are safe for use and don't list that the Products contain benzene.

73.     Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging, and advertising and purchased Products that were mislabeled,

unhealthy, and entirely worthless.  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

74.     Defendants' advertising, packaging, and Products' labeling induced Plaintiff and the New York Subclass Members to buy Defendants' Products.

75.     Defendants made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

76.     Defendants' conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

77.     Defendants made the material misrepresentations described in this Complaint in their advertising and on the Products' packaging and labeling.

78.     Defendants' material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the Products were and continue to be exposed to Defendants' material misrepresentations.

79.     As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

## THIRD CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY
**(On Behalf of Plaintiff and the Class)**

80.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

81.     Defendants provided Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Products are safe for use and do not contain benzene.

82.     The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

83.     These affirmations of fact became part of the basis for the bargain and were material to Plaintiff and Class Members' transactions.

84.     Plaintiff and Class Members reasonably relied upon Defendants' affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendants' Products.

85.     Defendants knowingly breached the express warranties by including benzene in the Products sold to Plaintiff and the Class without properly notifying them of their inclusion in the Products.

86.     Within a reasonable time after they knew or should have known, Defendants did not change the Products' labels to include benzene in the ingredient list or place a warning that benzene might be in the Products.

87.     Further, within a reasonable time after it knew or should have known of Defendants' breach, Plaintiff, on behalf of himself and Class Members, placed Defendants on notice of their breach, giving Defendants an opportunity to cure the breach, which they refused to do.

88.     Defendants thereby breached the following state warranty laws:

a.      Code of Ala. § 7-2-313;

b.      Alaska Stat. § 45.02.313;

18

c.      A.R.S. § 47-2313;

d.      A.C.A. § 4-2-313;

e.      Cal. Comm. Code § 2313;

f.      Colo. Rev. Stat. § 4-2-313;

g.      Conn. Gen. Stat. § 42a-2-313;

h.      6 Del. C. § 2-313;

i.      D.C. Code § 28:2-313;

j.      Fla. Stat. § 672.313;

k.      O.C.G.A. § 11-2-313;

l.      H.R.S. § 490:2-313;

m.      Idaho Code § 28-2-313;

n.      810 I.L.C.S. 5/2-313;

o.      Ind. Code § 26-1-2-313;

p.      Iowa Code § 554.2313;

q.      K.S.A. § 84-2-313;

r.      K.R.S. § 355.2-313;

s.      11 M.R.S. § 2-313;

t.      Md. Commercial Law Code Ann. § 2-313;

u.      106 Mass. Gen. Laws Ann. § 2-313;

v.      M.C.L.S. § 440.2313;

w.      Minn. Stat. § 336.2-313;

x.      Miss. Code Ann. § 75-2-313;

y.      R.S. Mo. § 400.2-313;

z.  Mont. Code Anno. § 30-2-313;

aa.  Neb. Rev. Stat. § 2-313;

bb.  Nev. Rev. Stat. Ann. § 104.2313;

cc.  R.S.A. 382-A:2-313;

dd.  N.J. Stat. Ann. § 12A:2-313;

ee.  N.M. Stat. Ann. § 55-2-313;

ff.  N.Y. U.C.C. Law § 2-313;

gg.  N.C. Gen. Stat. § 25-2-313;

hh.  N.D. Cent. Code § 41-02-30;

ii.  II. O.R.C. Ann. § 1302.26;

jj.  12A Okl. St. § 2-313;

kk.  Or. Rev. Stat. § 72-3130;

ll.  13 Pa. Rev. Stat. § 72-3130;

mm.  R.I. Gen. Laws § 6A-2-313;

nn.  S.C. Code Ann. § 36-2-313;

oo.  S.D. Codified Laws, § 57A-2-313;

pp.  Tenn. Code Ann. § 47-2-313;

qq.  Tex. Bus. & Com. Code § 2.313;

rr.  Utah Code Ann. § 70A-2-313;

ss.  9A V.S.A. § 2-313;

tt.  Va. Code Ann. § 59.1-504.2;

uu.  Wash. Rev. Code Ann. § 6A.2-313;

vv.  W. Va. Code § 46-2-313;

      ww.    Wis. Stat. § 402.313; and

      xx.    Wyo. Stat. § 34.1-2-313.

89.    As a direct and proximate result of Defendants' breach of the express warranty, Plaintiff and Class Members were damaged in the amount of the price they paid for the Products, in an amount to be proven at trial.

### FOURTH CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
#### (On Behalf of Plaintiff and the Class)

90.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

91.    Defendants sold and Plaintiff and Class Members purchased the Products.

92.    When sold by Defendants, the Products were not merchantable, did not pass without objection in the trade under the label description, was not of adequate quality within that description, was not fit for the ordinary purposes for which such goods are used, and did not conform to the promises or affirmations of fact made on its container or label.

93.    Within a reasonable time after they knew or should have known of Defendants' breach, Plaintiff, on behalf of himself and Class Members, placed Defendants on notice of their breach, giving Defendants an opportunity to cure their breach, which they refused to do.

94.    Because the products contain benzene, they in no way were safe for use as sunscreen products.

95.    As a direct result of Defendants' Products being unfit for its intended purposes and/or otherwise not merchantable, Plaintiff and Class Members were damaged because they would not have purchased Defendants' Products had they known the true facts regarding the benzene content.

## FIFTH CAUSE OF ACTION
## FRAUDULENT CONCEALMENT
### (On Behalf of Plaintiff and the Class)

96.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

97.     Defendants concealed and failed to disclose on the Products' packaging and labeling that the material fact the Products contained benzene, and that the Products were not safe or healthy for use.

98.     Defendants had knowledge that the Products contained benzene, and that the Products were not safe or healthy for use.

99.     Defendants had a duty to disclose that the Products contained benzene, and that the Products were not safe or healthy for use.

100.     Defendants had superior knowledge or means of knowledge available to them and knew that Plaintiff and Class Members would rely upon the representations and omissions of Defendants regarding the quality, health, safety, and ingredients of their Products.  Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains a toxin such as benzene, especially at the point of sale.

101.     Defendants' concealment was material and intentional because people are concerned with what is in the products that they are putting onto and into their bodies.  Consumers such as Plaintiff and the Class Members are influenced by the ingredients listed, as well as any warnings (or lack thereof) on the products they buy.  Defendants know that if they had not omitted that the Products contained benzene, then Plaintiff and the Class would not have purchased the Products at all.  However, Defendants wanted to increase sales and profits.

102.    Defendants' concealment misled Plaintiff and the Class as to the true nature of what they were buying and putting onto and into their bodies.

103.    Defendants fraudulently concealed that the Products contained benzene and that the Products were not safe or healthy for use.  Consequently, Plaintiff and the other members of the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

**SIXTH CAUSE OF ACTION**
**MEDICAL MONITORING**
**(On Behalf of Plaintiff and the Class)**

104.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

105.    At all relevant times, the Defendants designed, manufactured, assembled, inspected, tested (or not), packaged, labeled, marketed, advertised, promoted, supplied, distributed, sold and/or otherwise placed the Products into the stream of commerce, and therefore owed a duty of reasonable care to avoid causing harm to those that used them, such as Plaintiff. As a result of Defendants' negligence, Plaintiff and Class Members have been subjected to exposure to the carcinogen benzene, which is beyond normal background levels of risk.  As a proximate result of Defendants' conduct resulting in Plaintiff and Class Members' exposure to benzene, Plaintiff and Class Members have a significantly increased risk of suffering serious injury or contracting a serious latent disease and suffering further injury at an unknown date in the future. Such injuries include ailments such as bone marrow harm and blood cancer (such as leukemia), among others currently unknown or just being discovered.  A monitoring procedure exists that makes the early detection of these types of ailments and medical conditions possible.

106.    The prescribed monitoring program is reasonably necessary according to contemporary scientific principles.

107.     These procedures are different from that normally recommended in the absence of the benzene exposure.   These monitoring procedures include non-routine surveillance studies, laboratory testing, and physical examinations, and would be reasonably necessary according to contemporary scientific principles.

108.     Plaintiff and Class Members have suffered physical, mental, and emotional harms. Existing medical research indicates that exposure to benzene, which has been found to exist in the Product, can cause serious, life-threatening, and permanent injuries.   The injuries the Product causes on the human body have already been inflicted in their users, such as Plaintiff and the Class Members, but the full extent of the injuries will not manifest until later in the Plaintiff and Class Members' lives.   Thus, because of Defendants' conduct, it is reasonably necessary that Plaintiff and Class Members be placed under period diagnostic testing beyond that normally recommended in the absence of use of the Product.

109.     Defendants' acts were willful, wanton, or reckless and conducted with a reckless indifference to the health and rights of Plaintiff and Class Members.

110.     Plaintiff demands judgment against Defendants for medical monitoring damages to diagnose injuries caused by the Product at an earlier date to allow for timely treatment and prevention of exacerbation of injuries, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**SEVENTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and All Class Members in the Alternative)**

111.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

112.    Plaintiff, on behalf of himself and consumers nationwide, brings a claim for unjust enrichment.

113.    Defendants engaged in unlawful conduct by manufacturing, advertising, marketing, and selling the Products while misrepresenting and omitting material facts.

114.    Defendants' unlawful conduct, as described in this Complaint, allowed Defendants to knowingly realize substantial revenues from selling the Products at the expense of, and to the detriment or impoverishment of, Plaintiff and Class Members and to Defendants' benefit and enrichment.  Defendants have thereby violated fundamental principles of justice, equity, and good conscience.

115.    Plaintiff and Class Members conferred significant financial benefits and paid substantial compensation to Defendants for the Products, which were not as Defendants represented them to be.

116.    Under New York's common law principles of unjust enrichment, it is inequitable for Defendants to retain the benefits conferred by Plaintiff and Class Members' overpayments.

117.    Plaintiff and Class Members seek establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues.

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b) Entering preliminary and permanent injunctive relief against Defendants, directing

Defendants to correct their practices and to comply with the relevant consumer protection statutes;

(c)  Awarding all medical monitoring damages;

(d)  Awarding monetary damages and treble damages;

(e)  Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(f)  Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(g)  Awarding punitive damages;

(h)  Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys, experts, and reimbursement of Plaintiff's expenses; and

(i)  Granting such other and further relief as the Court may deem just and proper.

Dated: January 26, 2022

**THE SULTZER LAW GROUP P.C.**

By:     Jason P. Sultzer /s/

_____

Jason P. Sultzer, Esq.
Joseph Lipari, Esq.
Daniel Markowitz, Esq.
270 Madison Avenue, Suite 1800
New York, NY 10016
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
liparij@thesultzerlawgroup.com
markowitzd@thesultzerlawgroup.com

David C. Magagna Jr., Esq.
Charles E. Schaffer, Esq.
LEVIN SEDRAN & BERMAN
510 Walnut Street, Suite 500

Philadelphia, PA 19106
Tel: 215-592-1500
dmagagna@lfsblaw.com
cschaffer@lfsblaw.com

*Counsel for Plaintiff and the Class*